GORSUCH, Circuit Judge,
concurring in part and dissenting in part.
I concur a great deal more than I dissent. My colleagues hold the traffic stop lawful, the pat-down consensual, and Mr. Benard’s pre-arrest statements admissible. With all this, I agree. I agree, too, that Mr. Benard’s post-arrest statement was
erroneously admitted and that we must decide whether that error was or was not harmless. And I agree that, for a constitutional error like this one to qualify as harmless, it’s incumbent on the government to prove beyond a reasonable doubt that the admission of Mr. Benard’s post-arrest statements would’ve made no difference to his plea calculation. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States v. Miller, 111 F.3d 747, 751 (10th Cir.1997).
My concerns arise only when the court ventures beyond these holdings. On pages 1213, the court speculates that the government will “very rarely be able to make [the harmless error] showing” in the context of a conditional plea, citing for support state cases that categorically refuse to apply harmless error analysis in this arena. The court’s commentary here is dicta because neither Mr. Benard nor the government suggests any difficulty with the application of harmless error analysis in this case or discusses any of the arguments or authorities the court examines. See Headrick v. Rockwell Int’l Corp., 24 F.3d 1272, 1277-78 (10th Cir.1994) (White, J.) (failure to press an argument for reversal waives it). Neither does the court’s speculative aside matter to its ultimate holding on pages 1213-14, where it returns to and applies traditional harmless error analysis.
I mention this only because the court’s detour along the way to its holding raises important issues this court will have to resolve in another case another day. The court cites favorably state court decisions holding harmless error analysis inapplicable to the conditional guilty plea context because of the epistemological challenges associated with reconstructing whether a particular defendant would have pleaded guilty but for an antecedent legal error. See, e.g., People v. Hill, 12 Cal.3d 731, 117 *1216 Cal.Rptr. 393, 528 P.2d 1, 29 (1974). And on first encounter this line of thinking seems appealing enough. But unmentioned is the fact that these state decisions didn’t — and didn’t have to — grapple with the Federal Rules of Criminal Procedure and their command in Rule 52(a) that harmless error analysis applies to all nonstructural errors in federal proceedings. Or the fact that the Supreme Court has repeatedly told us that Rule 52(a) must be respected in federal proceedings. See, e.g., United States v. Dominguez Benitez, 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). Or the fact that the Supreme Court has even more specifically directed us to apply harmless error analysis when a district court fails to inform a defendant of all his legal rights before accepting his guilty plea — a circumstance sharing the very same sort of epistemological challenges as this case. See id. at 83, 124 S.Ct. 2333 (tasking federal appellate courts with deciding whether “but for the error, [the defendant] would not have entered the plea”). Unmentioned as well is the tool federal courts traditionally use to resolve doubts about the defendant’s likely conduct in an error-free but-for world: the burden of proof. By allocating to the government the burden of proving harmlessness, any difficulties in reconstructing an alternate error-free world are resolved in favor of the defendant. See 2 Kenneth S. Broun, McCormick On Evidence § 337 (6th ed. 2009) (“The risk of failure of proof may be placed upon the party who contends that the more unusual event has occurred.”); United States v. Olano, 507 U.S. 725, 734-35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (explaining Rule 52’s allocation of burdens). Whether and to what extent the state autho rities cited by the majority have anything useful to tell us in light of these considerations at play in federal practice are issues for another day and case, when the parties raise and have a chance to be heard on them and they make a difference to the outcome.
Finally, I must also respectfully dissent from the court’s harmless error holding. To be sure, the court eventually returns to and applies the traditional federal harmless error test (on pages 1213-14). But when it does so, the court tells us that the government hasn’t met its burden without telling us why. And it’s difficult to understand why. To be sure, after arresting Mr. Benard, a police officer asked him whether he would find anything in his car. Mr. Benard answered that his girlfriend sometimes kept a gun there. And that erroneously admitted statement, Mr. Benard argues, strengthened the government’s hand on the felon in possession charge and induced him to plead guilty.
But at least two serious problems attend this theory. First, Mr. Benard does not dispute that the government had ample other admissible evidence to prove the gun charge against him: everyone agrees the gun would have been found pursuant to a lawful inventory search regardless of Mr. Benard’s statements; the gun was located in a vehicle over which Mr. Benard had exclusive control; and Mr. Benard’s girlfriend gave a statement suggesting the gun was his. Second, and making matters even worse for Mr. Benard, the gun charge had no effect on the potential sentence he faced. When deciding whether to plead guilty, he already faced a 20 year mandatory minimum sentence thanks to the separate drug charges against him. And his advisory guidelines sentence range was even higher than that, thanks to a career offender enhancement. The gun charge had no impact — one way or the other — on any of this. (And, in the end of course, the district court varied downward from the guidelines range to the 20 year mandatory minimum.)
*1217 For its part, then, the government has advanced two powerful reasons for thinking that the suppression error here was harmless — that it would have had no effect on Mr. Benard’s calculation whether to plead guilty or proceed to trial. In reply, Mr. Benard offers us nothing on the other side of the equation. He rejoins with no reason — rational or even irrational — why the admission of his post-arrest statements were at all relevant to him in making his plea decision. To be sure, his brief argues at length and in detail how and why various other alleged district court errors did matter to his plea decision (for example, the admission of pre-arrest statements). But my colleagues and I reject all those other claims of error. On the sole error we do find, Mr. Benard has identified no reason to think it made any difference. Perhaps in another case to another defendant an error like this might have mattered. But in this case, on the evidence and argument before us, the government has met its high burden of showing harmless error and I would affirm.